**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**R.W.D. INNOVATIVE SPECIALTY
TRIMS LLC, a Florida limited
liability company,**

      **Plaintiff,**

**vs.**                            **Case No. 4:12cv599-WS/CAS**

**CRAIG A. OEHME,
POLYTECHNICS CORPORATION,
a California Corporation,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff filed a Complaint on November 16, 2012, alleging patent infringement by Defendant Craig A. Oehme (hereinafter Oehme), who owns and operates "E.E. Pauley Plastic Extrusion," and another corporation, Defendant Polytechnics Corporation, which is a suspended California corporation. Doc. 1 at 1-2. The Complaint alleged that Defendants are "making, selling, and/or offering to sell plastic trim products in the State of Florida, in this judicial district, and elsewhere in the United States, plastic trim strip products" that are covered by Plaintiff's Patents 222 and 472. *Id.* at 2-3. The Complaint asserts two counts for infringement: count I is premised on infringement of products covered by Patent 222 and count II is premised on an infringement of products covered by Patent 472. Doc. 1.

On March 7, 2013, Defendant Oehme filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, a motion to transfer venue. Doc. 10. Plaintiff filed a response in opposition, doc. 12, and this case was referred for a hearing on the motion. Doc. 13. An evidentiary hearing was held on June 6, 2013, to consider evidence relevant to the motion.[1] Docs. 25, 27. The parties jointly submitted Index 1 into evidence which is a composite of exhibits 1 through 312 and titled "Stipulated Evidence."[2] Thereafter, Plaintiff filed a notice of inadvertently omitted exhibits,[3] doc. 26, omitted from Plaintiff's response to the motion to dismiss or to transfer. Additionally, Oehme filed a supplement to the motion to dismiss, doc. 30, and an affidavit, doc. 31. Plaintiff has filed a supplemental brief on the evidence as well, doc. 32, although the supplement is sealed upon consent of the parties.

**Standard of Review**

Because this case involves claims of patent infringement, Federal Circuit law governs the personal jurisdiction issue. Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008), *cited in* Atlantis Hydroponics, Inc. v. International Growers Supply, Inc., No. 1:12cv1206, 2013 WL 28102, at *4 (N.D. Ga. Jan. 3, 2013). It has been well established since the Supreme Court decided International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), "that in order to subject a

_____

[1] Due to discussions on the record concerning proprietary business information, the transcript of the hearing has been filed under seal. Doc. 28.

[2] For ease of reference, when citing to exhibits contained within the Stipulated Evidence, the initials S.E. will be used followed by the page number as stamped on bottom right corner of each page of that Exhibit.

[3] The exhibits are cited to in the affidavit of Ken Rivest, doc. 12-1, submitted with Plaintiff's response, doc. 12.

defendant to an in personam judgment when he is not present within the territory of the forum, due process requires that the defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla. 1989). The Court clarified "that the test is whether the defendant's conduct in connection with the forum state is 'such that he should reasonably anticipate being haled into court there.' " World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), *quoted in* Venetian Salami Co., 554 So.2d at 500. In applying that test and determining whether sufficient minimum contacts exists depends, the facts are crucial to a court's analysis. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Thus, it is sometimes necessary to hold an evidentiary hearing to consider all the facts necessary to resolve a motion to dismiss for lack of personal jurisdiction. *See* Kemin Foods, L.C. v. Omniactive Health Technologies, Inc., 654 F.Supp.2d 1328, 1334 (M.D. Fla. 2009) (finding that "[i]n some circumstances the Court is required to hold an evidentiary hearing to resolve disputed facts if they are essential to the jurisdictional determination."). Federal Circuit law directs "that where jurisdictional facts are in dispute, a district court must hold an evidentiary hearing in order to impose the heightened preponderance standard." Campbell Pet Co. v. Miale, 542 F.3d 879, 888 (Fed. Cir. 2008) (noting that when an evidentiary hearing is not held, "a plaintiff need only make a prima facie showing of jurisdiction to survive the motion to dismiss."); Crowe v. Paragon Relocation Resources, Inc., 506 F.Supp.2d 1113, 1119 (N.D. Fla. 2007) (stating that when affidavits conflict, "the court must conduct an evidentiary

hearing in order to resolve the issues of disputed fact" concerning personal jurisdiction over a non-resident defendant); <u>Burton v. Subaru of America, Inc.</u>, 646 F.Supp. 78, 78 (N.D. Ga. 1986) (noting that the "court may proceed to decide the jurisdictional question upon the pleadings and affidavits or it may choose to require an evidentiary hearing where issues of credibility or disputed fact must be resolved."); <u>Venetian Salami Co.</u>, 554 So.2d at 503 (remanding for a limited evidentiary hearing on the jurisdictional issue because facts set forth in affidavits could not be reconciled to determine whether personal jurisdiction exists).  Here, this case was referred specifically for that purpose, doc. 13, and notwithstanding that the Court is called upon to resolve a motion to dismiss, affidavits and evidence may be considered.  "Where, as here, personal jurisdictional is determined after an evidentiary hearing, the plaintiff must establish the requisite jurisdictional facts by a preponderance of the evidence."  <u>Peavy v. Klausner</u>, No. 8:11cv508, 2011 WL 3841633, at *1 (M.D. Fla. Aug. 3, 2011), *citing* <u>Tommy Bahama Gp., Inc. v. Eagle</u>, No. 3:09cv641, 2010 WL 3340538, at *2 (M.D. Fla. Aug. 23, 2010); <u>Resolution Trust Corp. v. Pharaon</u>, 915 F.Supp. 351, 358 (S.D. Fla. 1996); <u>Welt Indus., Inc. v. Weingart, Inc.</u>, 660 F.Supp. 424, 425 (N.D. Ga. 1987).  The parties do not disagree that the preponderance of the evidence standard is applicable in resolving the motion to dismiss.  Doc. 28 at 7.

**Motion to Dismiss, doc. 10**

Defendant Oehme's motion to dismiss for lack of personal jurisdiction, doc. 10, asserts that Oehme resides in California, his business is solely in California (with no other offices outside the state) and although that business has a website, it is "not interactive in that no sales" are possible from the website.  Doc. 10 at 8-9.  Oehme also

asserts that the website "is not targeted at or directed to any specific state, such as" Florida. *Id.* at 9. Oehme argues that all business documents are kept in California, no banking is done in Florida and Oehme has not contracted with any Florida entity "to provide him with services or goods that are either made in, originate in, or ship from" Florida. *Id.*

Oehme further asserted in the motion to dismiss that "Oehme has never traveled to" Florida to either participate in any trade show or conference or "solicit or conduct business" in Florida. *Id.* at 9. While Oehme has admittedly sold products in Florida, it is claimed that sales "are negligible" and that all products sold "were or are designed and made in and marketed from California." *Id.* at 9-10. Oehme declares that in 2011, Oehme sold $43,473.20 of products in Florida, $2,203 in Northern Florida, and that the Florida sales represent only seven percent of all 2011 revenue. Doc. 10 at 10; doc. 11 at 7. In 2012, Oehme sold $50,368.52 of products in Florida, $1,530 in Northern Florida, and that the Florida sales represent only six percent of all 2012 revenue. Doc. 10 at 10, doc. 11 at 7. As of March 1, 2013, Oehme declares that $7,087.50 of sales were to Florida buyers, with just $1,077.50 of those sales going to buyers in the Northern District of Florida. Doc. 11 at 7.

**Plaintiff's Response, doc. 12**

Plaintiff contends that Oehme sells products in the State of Florida and, as is customary in the industry, such products are sold "to a licensed installation business, reseller or contractor, rather than an end-user, due to the knowledge required to install the trim around the replacement doors and windows." Doc. 12 at 6. Plaintiff presented an affidavit in which Plaintiff asserts that Oehme "has repeatedly attempted to solicit

sales from numerous existing customers" of Plaintiff's company, R.W.D. Innovative Specialty Trims LLC., within the State of Florida.  Doc. 12-1 at 2.  Plaintiff contends that it is irrelevant that Oehme did not actually travel to Florida to do so, doc. 12 at 6, because Oehme "initiated contact with numerous installation businesses within the state of Florida in order to solicit direct sales of Oehme's infringing product to these businesses."  Doc. 12-1 at 2.  Plaintiff avers that Oehme offered to sell its competing product to Folkers Window Company and to Window World of Tallahassee, Inc., and that Window World ceased purchasing trim products from Plaintiff and now has a purchasing relationship with Oehme.  *Id.*, at 2-3.  Both Folkers and Window World are located within the Northern District of Florida.  *Id.*  Plaintiff contends that due to Oehme's actively soliciting customers in Florida and the establishment of sales relationships in Florida for several years, in particular, in the Northern District of Florida, personal jurisdiction exists under Florida's long-arm statute and venue is appropriate in this Court.  Doc. 12 at 7-16.

**Evidentiary Hearing**

A transcript of the sealed evidentiary hearing has been filed as document 28. Furthermore, the parties submitted a book of Stipulated Evidence (containing exhibits 1-312) to be considered in ruling on the motion to dismiss.  Following the hearing, the parties were permitted to submit supplemental memoranda.

Plaintiff points out that evidence was obtained through discovery which now reveals that Oehme sent "hundreds of direct mail pieces" to businesses in Florida, to as many as 176 Florida cities.  Doc. 28 at 6.  Plaintiff asserts the evidence shows that "Defendants affirmatively directed mailers in mass to businesses in the [S]tate of

Florida, advertising the accused products from which sales resulted."  Doc. 32-1 at 4.

Plaintiff further asserts that Defendants maintain "ongoing sales of the accused product

with multiple window installation companies" in Florida.  *Id.*  "Defendants were

affirmatively aware of these relationships, shipped product to these businesses and

attempted to maintain good working relationships with these businesses, along with

maintaining credit card authorization agreements with the businesses."  *Id.*

Oehme points out in his supplemental memorandum that his business "only has

had a total of 14 customers ever in" the State of Florida and contends that only Window

World of Tallahassee is within this District.  Doc. 30 at 2, *citing* to S.E. at 58-59.

Oehme also asserts that beyond those customers, "Oehme's only other contacts with

residents of this district . . . consists of the mailing of a <u>non-state specific</u> flier conducted

as part of a <u>nationwide</u> advertising campaign."  Doc. 30 at 5.  "Oehme mailed this same

geographically-neutral flier to 9909 addressees throughout the country which he found

by running a non-geographic specific internet search on companies which he believed

would be in need of his window trim product by using the search terms 'window

replacement', 'window glass', 'window manufacture', or other terms related to

'windows'."  *Id.*, *citing* to S.E. at 256; *see also* doc. 31, Ex. A.

The joint evidence reveals that Oehme and his company sent direct mailers[4] to

companies all over the United States.  Doc. 31, Ex. A.  In particular, Oehme sent

mailers to 640 businesses in the State of Florida.  *Id.* at 54-68.[5]  Defendant asserts the

---

[4] Copies of the mailers are in the stipulated evidence.  S.E. at 78-81.

[5] Defendant Oehme's response asserts that after sending 9909 mailers, "only
176" were in Florida, and "this mailing campaign did not yield much fruit as only 14 FL
addressees ever became customers . . . ."  Doc. 30 at 6.  To support that statement,

"mailers did not constitute specific offers for sale, but merely apprised the recipient thereof of Oehme's products and contact information."  SE at 28.  In Defendant's deposition, when asked how he "advertised [his] trim products," Defendant responded: "Mailers."  S.E. 256:2-4.  Defendant Oehme went on to explain that mailers are sent and if the company responds, Defendant then begins communication.  *Id.* at 257:5-9.

The list of mailers sent to Florida businesses varies slightly, *see* n.5 *supra*, but the parties stipulated evidence shows that Oehme sent mailers to 687 businesses in Florida.  S.E. at 28, 58-77.  Furthermore, Plaintiff has shown by a preponderance of the evidence that Oehme has 17 clients in the State of Florida, *see* S.E. at 58-59, not just 14 as stated in Oehme's response, doc. 30.

Standard industry practice involves selling trim products to an installation business, reseller or contractor, who then provides "an end-user with an installation service which includes the cost of materials provided such as the trim and the replacement doors and windows."  Doc. 12 at 6.  "Thus the installation businesses typically make ongoing purchases of the trim products from one company over a period of time and provides installation of such trim products to multiple end-users."  *Id.* Plaintiff points to evidence showing that Oehme's company "Pauley Plastics" made continuous and ongoing sales to Window World of Melbourne, Florida.  Doc. 32-1 at 8.

---

Oehme cites to S.E. at 58-77, yet the beginning point for that comment is the total 9909 mailers sent.  The list of total mailers to all states is not provided in the Stipulated Evidence (S.E.), but in Exhibit A, attached to counsel's declaration, doc. 31. Furthermore, in the declaration, doc. 31, it is stated that 640 businesses in Florida were sent mailers.  Review of the Florida addresses provided in the parties' stipulated evidence, however, and cited by Defendant Oehme, reveals that mailers were sent to 687 Florida addresses.  S.E. at 28, 58-77.  Furthermore, that list shows Oehme has 17 current clients, *see* S.E. at 58-59, not just 14 as stated in the response, doc. 30.

Oehme's invoices to Window World of Melbourne demonstrates 28 total sales between January 2011 and March 2013. S.E. at 124-135, 163-171, and 192-193. After purchasing product from Oehme, Window World then resells and distributes the product to multiple end-users (consumers) in the State of Florida. Doc. 32-1 at 8, *citing* doc. 28 at 11. In other words, the product is not an item a consumer would purchase but, rather, persons working in the industry (such as window dealers, window manufacturers, and window installers) purchase the item in bulk. Doc. 28 at 11, 7-5. To put this into perspective, review of the invoices reveals that in making those 28 purchases from Oehme, Window World of Melbourne put a total of 7,715 pieces of product into the stream of commerce in Florida.

There is also evidence that Oehme invoiced Window World of Ocala for 21 total sales between January 2011 and April 2013. S.E. at 136-140, 172-178, and 194-196. Those sales resulted in 11,106 pieces of product entering the stream of commerce in Florida. The evidence shows that Oehme invoiced Window World of Central Florida for 24 total sales between January 2011 and March 2013. S.E. at 112-123, 157-162, and 191. Those sales resulted in 8,375 pieces of product entering the stream of commerce in Florida. The evidence also reveals that most of Oehme's business in Florida has been with these three businesses, and they are ongoing, repeat customers who purchase more items with some regularity.

Oehme also had 7 total sales with Window World of Tallahassee and between February 2011 and February 2013, 1,750 pieces of product were purchased by that business and shipped into Florida. S.E. 144-146. 180-181. Sales from just these four

businesses listed above resulted in a total of 28,946 pieces of product sold and shipped from Defendants into Florida to enter the stream of commerce in this State.

The stipulated evidence reveals that Oehme's sales in the United States generally, and in the State of Florida specifically have generally been increasing. S.E. at 269. In the year 2010, Oehme's total sales in the United States were $418,098.97, and in 2011, sales were up to $532,366.21, and up again in 2012 to $709,159.67. Doc. 30 at 3; S.E. at 269. Just through April of 2013, Oehme's total U.S. sales were at $303,257.54. *Id.* As for sales in the State of Florida, in the year 2010, Oehme sold $21,592.50 of product; in 2011, Oehme sold $42,373.20 of product in Florida, in 2012, Oehme sold $48,380.56 of product, and through April of 2013, Oehme's sales in the State of Florida were up to $29,879.40. *Id.* Thus, sales in Florida represent 5.1 percent of Oehme's total U.S. sales in 2010, 7.9 percent of total sales in 2011, 6.8 percent of total sales in 2012, and as of April, 2013, 9.8 percent of all revenue. Doc. 30 at 3; S.E. at 269. Those figures suggest an interest in increasing business and continuing sales.

**Analysis**

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Personal jurisdiction is a restriction on judicial power as a matter of individual liberty, and "a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority." Ruhrgas AG, 526 U.S. at 584, 119 S.Ct. at 1570. Unless waived, personal jurisdiction "is 'an

essential element of the jurisdiction of a district ... court,' without which the court is 'powerless to proceed to an adjudication.' " Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 382, 57 S.Ct. 273, 81 L.Ed. 289 (1937), *quoted in* Ruhrgas AG, 526 U.S. at 584, 119 S.Ct. at 1570.

A two-part inquiry is used in the Federal Circuit to determine whether the Court has personal jurisdiction over a nonresident defendant. Emissive Energy Corp. v. SPA-Simrad, Inc., 788 F.Supp.2d 40, 43 (D.R.I. 2011). The first question considers whether jurisdiction exists under Florida's long-arm statute. Celorio v. Google Inc., 872 F.Supp.2d 1327, 1330 (N.D. Fla. 2012), *citing* Horizon Aggressive Growth v. Rothstein–Kass, 421 F.3d 1162, 1166 (11th Cir. 2005). "If there is a basis for the assertion of personal jurisdiction under the state statute, the Court will next determine 'whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " Richards v. Sen, No. 07-14254, 2008 WL 4889623, at *2 (S.D. Fla., Nov. 12, 2008)(other citations omitted). Thus, even if jurisdiction exists under Florida's long-arm statute, the Court must still review the facts to determine if the constitutional test is met. Celorio, 872 F.Supp.2d at 1330; Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 856 (11th Cir. 1990), *quoting* Venetian Salami Co., 554 So.2d at 500.

Florida's long-arm statute, set forth at Fla. Stat. § 48.193(1)(b), is satisfied when a defendant, or its agent, commits a tortious act within Florida. Courts have held that "[p]atent infringement constitutes a tortious act within the meaning of Florida's long-arm statute for the purposes of establishing personal jurisdiction." J.P. Morgan Trust Co. v.

<u>Potash Corp. of Saskatchewan, Inc.</u>, No. 3:05-cv-587-J-32-MCR, 2007 U.S. Dist. LEXIS 23872 at *10, n.8 (M.D. Fla. Mar. 30, 2007); <u>Mars, Inc. v. Coin Acceptors, Inc.</u>, 527 F.3d 1359, 1365 (Fed. Cir. 2008); <u>Kemin Foods, L.C. v. Omniactive Health Tech., Inc.</u>, 654 F.Supp.2d 1328, 1333 (M.D. Fla. 2009). It is not seriously disputed that Florida's long arm statute provides a jurisdictional basis for this case. *See* doc. 28 at 4.

The second question is "whether asserting personal jurisdiction over Defendant is consistent with the Due Process Clause." <u>Emissive Energy Corp.</u>, 788 F.Supp.2d at 43. "Due process is satisfied where a court has general or specific jurisdiction over a defendant." *Id.*, *citing* <u>Autogenomics, Inc. v. Oxford Gene Tech. Ltd.</u>, 566 F.3d 1012, 1017 (Fed. Cir. 2009); <u>Dram Tech. LLC v. America II Group, Inc.</u>, No. 2:10cv45, 2011 WL 4591902, at *1 (E.D. Tex. Sept. 30, 2011) (stating "[p]ersonal jurisdiction has generally been divided into two categories: general personal jurisdiction and specific personal jurisdiction."). "General personal jurisdiction 'requires that the defendant have ʻcontinuous and systematicʼ contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts.' " <u>Silent Drive, Inc. v. Strong Indus., Inc.</u>, 326 F.3d 1194, 1200 (Fed. Cir. 2003). As correctly argued by Defendant Oehme, and conceded by Plaintiff, general personal jurisdiction is not applicable in this case. Doc. 30 at 1-8; doc. 32 at 3-4.

"The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." <u>Nuance Commc'ns, Inc. v. Abbyy Software House</u>, 626 F.3d 1222, 1231 (Fed. Cir. 2010); *see also* <u>Dram Tech.</u>,

2011 WL 4591902, at *1.  Analysis of the first prong,[6] which considers whether "sufficient minimum contacts warrant assertion of personal jurisdiction, there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting business within the forum state, thus invoking the benefits and protections of its laws.' " Evanko v. WCDI, LLC, No. 11-1099, 2012 WL 393261, at * 3 (W.D. Pa. Feb. 6, 2012) (other citations omitted).  As for the second prong, specific jurisdiction exists where the cause of action arises out of or relates to a defendant's contacts with the forum state, even if those contacts are isolated and sporadic.  Trintec Indus. v. Pedre Promotional Prods., 395 F.3d 1275, 1279 (Fed. Cir. 2005).  The first two prongs relate to the requirement of "minimum contacts" and the third element relates to the notion of "fair play and substantial justice."  Akro Corp. v. Luker, 45 F.3d 1541, 1545–46 (Fed. Cir. 1995).  "This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are 'random, fortuitous,' or 'attenuated,' or that result from the unilateral activity of another party or a third person."  Evanko, 2012 WL 393261, at * 3, *citing to* Burger King, 471 U.S. at 475 (citations omitted).

Oehme contends that in this case, advertisements are insufficient to establish jurisdiction.  Doc. 30 at 9.  In support, Oehme cites to Crochet v. Wal-Mart Stores, Inc., No. 6:11cv01404, 2012 WL 489204, at *3, n.3 (W.D. La. Feb. 13, 2012) which quoted from Quick Techs., Inc. v. Sage Group PLC, 313 F.3d 338, 345 (5th Cir. 2002) (noting "[g]enerally, advertisements are insufficient to establish personal jurisdiction.").

---

[6] The first two prongs are relevant to the "minimum contacts" prong of the due process inquiry, focusing "on whether the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.' "  Burger King, 471 U.S. at 471-76, 105 S.Ct. 2174, *quoted in* Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

Crochet, however, is a personal injury case, not a patent case, and not particularly relevant.

Oehme also points to Taylor v. Ishida Co., Ltd., 2002 WL 1268028, at *4 (N.D. Tex. May 31, 2002), a patent case in which the plaintiffs filed suit in Texas and alleged "that defendants solicited business in the state of Texas, transacted business within the state, and/or derived financial benefit from the state directly related to the instant patent infringement cause of action and the infringing products." Taylor, 2002 WL 1268028, at *4. Relying on Viam[7] and World-Wide Volkswagen, *supra*, and "the stream of commerce theory," the court noted that defendant HC sold the challenged product in Texas, "and about 4% of its total U.S. sales volume" was in the Northern District of Texas. *Id.* at *5. The court found that the sales "were not isolated occurrences, but arose from" an effort "to serve the Texas market." *Id.* Furthermore, contacts could be expected to continue and there was evidence that defendants were looking at another potential large customer. *Id.* Based on those facts, the court held that it could exercise personal jurisdiction "under stream of commerce principles." *Id.* at 6. That case, with limited sales of just four percent in Texas, weighs in Plaintiff's favor because the evidence here reveals Florida sales have been continuing and increasing for Oehme, and were up to nearly ten percent of Oehme's total sales. It would appear that Oehme's sales are increasing because of Oehme's marketing plan to provide over 600 Florida businesses a mailer which advertised the products challenged in this case.

---

[7] Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed. Cir. 1996) was a declaratory judgment patent case which held the patent owner had sufficient minimum contacts with forum under California's long-arm statute and federal due process, and evaluated contacts under International Shoe's test.

Oehme challenges jurisdiction here also on the basis that "there is no indication of any alleged tort of patent infringement having occurred in this forum" and that mere consequences which stem from a tort injury do not confer personal jurisdiction at the site of those consequences.  Doc. 30 at 9.  In making that argument, Oehme cites to Allred v. Moore & Peterson, 117 F.3d 278 (5th Cir. 1997), a tort case for malicious prosecution and abuse of process where the only contact in Mississippi was service of process by certified mail from Texas to Mississippi.  That case is not on point.  Moreover, "[u]nder patent law, patent infringement occurs where the allegedly infringing sales are made."  N. Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1578-79 (Fed. Cir. 1994), cited in Quick Point, Inc. v. Excel Eng'g, Inc., No. 4:08cv797, 2009 WL 330837, at *4 (E.D. Mo. Feb. 9, 2009).  It has been well established that "to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there)."  N. Am. Philips Corp., 35 F.3d at 1579, relied on in Litecubes, LLC v. Northern Light Products, Inc., 523 F.3d 1353, 1369-70 (Fed. Cir. 2008); Instabook Corp. v. Instantpublisher.com, 469 F.Supp.2d 1120, 1122-23 (M.D. Fla. 2006).  Notwithstanding that design, marketing, and manufacturing occurred outside Florida, the fact remains that sales occurred in Florida and, thus, the alleged tort was committed in Florida.

Oehme asserts that a low level of sales of accused infringing products without a forum-based operation or offices "does not equate with purposeful direction of activities to a forum or the purposeful availment of the benefits and protections of the forum's laws and privileges."  Doc. 30 at 9.  Oehme maintains that its sales are small, there is only one customer in the Northern District of Florida, there was "no targeted

advertising" but only "geographically-neutral mailers" sent, use of a non-interactive

website, and no operations in Florida which would establish specific personal

jurisdiction over Oehme.  Doc. 30 at 8-13.

     Prior to setting forth the relevant facts in this case, it is necessary to clarify what

is not relevant.  Oehme makes much of the fact that there are few customers in this

District, but as pointed out by Plaintiff, doc. 32-1 at 5-6, the standard required for

jurisdiction is there must "exist 'minimum contacts' between the defendant and the

forum *State*."  <u>World-Wide Volkswagen</u>, 444 U.S. 286, 291, 100 S.Ct. at 564, *citing*

<u>International Shoe Co.</u>, 326 U.S. at 316, 66 S.Ct. at 158 (emphasis added).  Plaintiff is

not required to show such contacts in this District, but within the State of Florida.

Further, Oehme asserts that he "simply sent mailers to FL addressees . . . irrespective

of location or whether the addressee was a customer of Plaintiff or any other company .

. . ."  Doc. 30 at 10.  The claims raised in this case are not for the tortious interference

with business relationships, but patent infringement.  So long as the infringement took

place in Florida through the sales of an allegedly infringing product, Florida's long-arm

statute is applicable.

     Applying the Federal Circuit's three prong test for specific jurisdiction reveals that

the first factor is met as Oehme purposefully directed activities at the forum state.

Plaintiff points to numerous facts to show by a preponderance of the evidence that

Defendants purposefully directed activities into the State of Florida.  First, "Defendants

solicited sales by identifying potential purchasers, namely window installation

companies, within the state of Florida, and directed advertising of the accused products

to such businesses."  Doc. 32-1 at 9.  Oehme researched businesses in the industry in

the State of Florida and mailed flyers advertising its products to well over 600 Florida businesses.  Second, Oehme successfully created relationships with seventeen companies who have purchased products from Oehme, amounting to nearly ten percent of sales in the beginning quarter of 2013.  Third, Oehme has established ongoing relationships with many of those businesses as the evidence reveals repeat sales on a fairly regular basis to several customers.[8]  Thus, Oehme has continuing sales with Florida customers that are not isolated but repeat with regularity; that customer base is sufficient for "minimum" contacts.  While there are only 17 Florida businesses listed as customers, due to the nature of the industry, those 17 businesses distribute and install Oehme's product to a multitude of end-users in Florida.  The evidence reveals that nearly 29,000 pieces of product were sold and shipped into Florida from Oehme's top four purchasers alone.

Fourth, "Defendants have a credit card authorization agreement with Florida businesses who have recurring purchases through Defendants of the accused product." Doc. 32-1 at 7.  Fifth, by virtue of the fact that Oehme's sales revenue has generally been increasing each year, Plaintiff asserts that Oehme and his company "anticipate and intend on future sales within the state of Florida . . . ."  *Id.*  Sixth, although Oehme does not maintain a warehouse or other office in Florida, Oehme has established an "operation" or enterprise to distribute its product "to end users within the state of Florida by selling to established ongoing customers who resell and install the accused trim

---

[8] There were 28 sales occurring with regularity to Window World of Melbourne. S.E. at 124-135, 163-171.  There have been 24 sales also occurring regularly with Window World of Central Florida, S.E. at 112-123, 157-162, 191, and 21 sales to Window World of Ocala, S.E. at 172-178, 136-140.  Repeat sales have also occurred with numerous other Florida customers.  S.E. at 112-198.

products to end-users." *Id.* Seventh, "Defendants have received benefit from consumers within the state of Florida through the Defendants sales activities" as the invoices are all stamped "paid." *Id.* Eighth, Defendants have shipped their product into the State of Florida and have established a method for doing so.

The second prong of specific jurisdiction is met because Plaintiff's "claim arises out of or relates to" Oehme's conduct in selling a product which allegedly infringes on Plaintiff's patent. Nuance Commc'ns, Inc., 626 F.3d at 1231; Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC, 861 F.Supp.2d 730, 732 (E.D. Va. 2012); Momenta Pharmaceuticals, Inc. v. Amphastar Pharmaceuticals, Inc., 841 F.Supp.2d 514, 521 (D.Mass. 2012), *citing* HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1308 (Fed. Cir. 1999) (noting that an activity gives rise to a cause of action where it is a basis for the action).

As for the third and remaining prong, Oehme has argued that exercising "jurisdiction over Oehme would offend traditional notions of reasonableness and fairness." Doc. 10 at 22. Oehme contends that in considering the factors,[9] the burden on Defendant, a California resident, "to defend the suit in this Court would be

---

[9] The Supreme Court has listed the following factors as relevant to the consideration of reasonableness:

> '[T]he burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.

Burger King Corp., 471 U.S. at 477, 105 S.Ct. at 2184, *quoting* World–Wide Volkswagen Corp., 444 U.S. at 292, 100 S.Ct. at 564.

significant."  Doc. 10 at 15.  Oehme, however, does not explain why it would be

significant.  Oehme also asserts that Florida's interest in this dispute is "minimal," an

argument premised on the fact that the "small level of sales in" the State is not enough

to provide a "significant interest in adjudicating the matter."  *Id.* at 15.  Regarding the

remaining factors, Oehme contends that California is the most appropriate court to hear

this case as he has material contacts there and "nearly all the infringing actions took

place" there.  *Id.* at 15-16.

Plaintiff on the other hand, asserts that he has an interest in protecting the

patents against infringement, and because economic loss to Plaintiff occurred in this

State, jurisdiction is appropriate, reasonable and fair here.  Doc. 32-1 at 11; doc. 12 at

13.  A State also "has an interest in discouraging injuries that occur within its

boundaries, including injuries resulting from patent infringement."  Elan Microelectronics

Corp. v. Pixcir Microelectronics Co. Ltd., No. 2:10cv14, 2012 WL 523695, at *7 (D.Nev.

Feb. 16, 2012); Beverly Hills, 21 F.3d at 1568.  "A State generally has a 'manifest

interest' in providing its residents with a convenient forum for redressing injuries inflicted

by out-of-state actors."  Burger King Corp, 471 U.S. at 473, 105 S.Ct. at 2182-83.

> Moreover, where individuals 'purposefully derive benefit from their interstate
> activities, Kulko v. California Superior Court, 436 U.S. 84, 96, 98 S.Ct. 1690,
> 1699, 56 L.Ed.2d 132 (1978), it may well be unfair to allow them to escape
> having to account in other States for consequences that arise proximately from
> such activities; the Due Process Clause may not readily be wielded as a
> territorial shield to avoid interstate obligations that have been voluntarily
> assumed.  And because 'modern transportation and communications have made
> it much less burdensome for a party sued to defend himself in a State where he
> engages in economic activity,' it usually will not be unfair to subject him to the
> burdens of litigating in another forum for disputes relating to such activity.

Burger King Corp, 471 U.S. at 473-74, 105 S.Ct. at 2182-83 (other citations omitted).

Plaintiff's interest in obtaining the most efficient resolution is met by continuing this case in this District where it has now been pending for eight months.  Although California is presumed to be judicially efficient, the practical reality of transferring a case to another Court suggests that it is more efficient to retain the case in this forum. Plaintiff has the better of this argument and though there may be travel burden on Oehme, it is not unreasonable or unfair to require the defense of this case in this Court where Defendants' products were sold and will be used by Florida citizens.  "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. 559, *quoted in* Avocent Huntsville Corp, 552 F.3d at 1330.  Thus, Plaintiff has shown by a preponderance of the evidence that the assertion of personal jurisdiction is "reasonable and fair."   It is recommended that Defendant Oehme's motion to dismiss for lack of personal jurisdiction, doc. 10, be denied.

**Venue**

A district court has authority under 28 U.S.C. § 1404(a) to transfer a civil action to any other district in which it might have been brought "for the convenience of parties and witnesses, in the interest of justice."  "Because federal courts normally afford deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice."  In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989), *cited in* Carroll v. Texas Instruments, Inc., 910 F.Supp.2d 1331, 1333 (M.D. Ala. 2012).  Because resolution of

the venue issue is a discretionary decision, the following factors should be weighed in ruling on a § 1404 motion to transfer:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005),[10] citing Gibbs & Hill, Inc. v. Harbert Int'l, Inc., 745 F.Supp. 993, 996 (S.D.N.Y. 1990); Wi-LAN USA, Inc. v. Apple Inc., No. 12cv2438, 2013 WL 1343535, at *2 (S.D. Fla. Apr. 2, 2013) (noting that "[n]o single factor is dispositive, and courts have differed in the weight afforded to each individual factor.").

Initially, it is noted that this case could have been originally brought in California, but as determined in this Report and Recommendation, it is also permissible to file the case in this Court as personal jurisdiction is proper.  Under the general venue statute, an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  There is also a more specific venue provision for patent cases which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and

---

[10] The law of the regional circuit applies in ruling on a motion to transfer venue under § 1404.  Gro Master, Inc. v. Farmweld, Inc., — F.Supp.2d ---, 2013 WL 275607, at *9 (N.D.Iowa, Jan. 24, 2013), citing In re Link_A_Media Devices Corp., 662 F.3d 1221, 1222–23 (Fed. Cir. 2011).

established place of business." 28 U.S.C. § 1400(b). Notwithstanding the more specific provision, "the general rule that a specific statute is not controlled or nullified by a general statute regardless of priority of enactment, absent a clear intention otherwise, does not govern the present situation." VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1580-84 (Fed. Cir. 1990). "Since 1948, the general venue law has authorized suit against a corporate defendant not only where he maintains a 'regular and established place of business,' as in § 1400(b), but also where he is 'doing business.' 62 Stat. 935, now § 1391(c)." VE Holding Corp., 917 F.2d at 1583. Thus, the established law of the Federal Circuit is that "venue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced." *Id.* at 1583; *see also* Vivant Pharmaceuticals, LLC v. Clinical Formula, LLC, No. 10-21537, 2011 WL 1303218, at *2 (S.D. Fla. Mar. 31, 2011)(noting that "[f]or a corporate defendant, the reach of § 1400(b) is co-extensive with the personal jurisdictional requirements of 28 U.S.C. § 1391(c).").

The first factor to be considered in deciding a motion for transfer is the convenience of the witnesses. Defendant Oehme contends that all non-party witnesses for Defendants reside in California "and would be subject to compulsory process there, not here." Doc. 10 at 28. Moreover, Defendant contends the subject matter of their testimony goes "to the very core of a patent case." *Id.* Defendant identifies four non-party witnesses who have "knowledge about the alleged infringement, the accused product and related sales and financial information, and invalidity and non-infringement defenses." Doc. 30 at 14. Plaintiff, on the other hand, contends that non-party

witnesses such as employees of Window World of Tallahassee and Folkers Window

Company in Pensacola, Florida, have relevant information and "may require the ability

of the court to compel the attendance of the witness in order to obtain specifics

regarding the nature of the products sold and documentation regarding the sales." Doc.

12 at 17-18. It is unknown, however, how many non-party witnesses Plaintiff would call.

Nevertheless, courts should not merely tally the number of witnesses to make that

determination. *See* Carroll, 910 F.Supp.2d at 1335; Dale v. United States, 846

F.Supp.2d 1256, 1257 (M.D. Fla. 2012) (noting that the court "will not simply 'tally the

number of witnesses' in each prospective forum to determine which is more

convenient"). It is also unknown how significant Plaintiff's witnesses from the Florida

businesses would be as to the ultimate issue of whether Plaintiff's patent has been

infringed. The Florida witnesses appear relevant to the issue of sales which may be

established through the documentary evidence. Defendant Oehme has specified that

the four non-party witnesses have knowledge relevant to the merits of this case and, as

case law has established, "the majority of the witnesses in a patent infringement case

originate with the defendant . . . ." Brandywine Commc'ns Tech., LLC v. Cisco

Systems, Inc., No. 6:11cv1843, 2012 WL 8281188, at *4 (M.D. Fla. Mar. 26, 2012).

Here, this factor weighs in Defendant's favor as California will be more convenient to

the potential witnesses.

A related issue is which nonparty witnesses may be compelled to attend a trial in

this matter. Because California witnesses are beyond this Court's subpoena power

(100-mile limit imposed in Rule 45(b)(2)(C)), and Florida witnesses are beyond the

California court's power, this factor is neutral. It is unknown from either party whether

any of the witnesses would voluntarily testify, whether deposition testimony would be sufficient, or the like.  Without such information, this factor cannot weigh in either party's favor.

Another factor to be considered is the convenience of the parties.  One party will be required to travel whether the case remains here or is transferred.  As this case now stands, this factor is neutral.

The parties, not surprisingly, disagree on the locus of operative facts in this case. Oehme asserts that a "defendant's place of business" is the preferred forum because it "usually constitutes the 'center of gravity of the alleged patent infringement.' "  Doc. 10 at 25.  Oehme states that because all "products are designed, manufactured, and inventoried" in California, the "hub of the activity concerning infringement," the case should be transferred to California.  Doc. 30 at 16-20; doc. 10 at 25-26.  Plaintiff asserts that the operative facts are where a patent is actually infringed, which Plaintiff contends is in Florida.  Doc. 32-1 at 15.  Plaintiff argues that because "the patent infringement was committed in Florida and resulted in injury within Florida," the focus of the claim should be on the "relevant sales and shipment of the infringing products to the installation companies and the distribution of the accused products to end users."  *Id.* at 15-16.

"[I]n a patent-infringement case, the "design, development, marketing, manufacture, and sale" of the accused products will often be the primary issues for litigation."  Carroll, 910 F.Supp.2d at 1340.  This is often referred to as "the center of gravity" and, usually, the location of these operative facts "lies where the allegedly infringing product was designed, developed, and produced."  *Id.* at 1339-40.  While the

parties have presented stipulated evidence showing that sales occurred in Florida, that carries little weight on the issue of venue because sales have occurred nationwide. Brandywine Commc'ns Tech., 2012 WL 8281188, at *3, *citing* In re Acer America Corp., 626 F.3d 1252, 1256 (Fed. Cir. 2010) (ordering district court to transfer action to Northern District of California, where the allegedly infringing products were researched, designed, developed and tested); In re Hoffman–La Roche Inc., 587 F.3d 1333, 1338 (Fed. Cir. 2009) (ordering district court to transfer action to the Eastern District of North Carolina, where the accused drug was developed and tested).  Furthermore, "courts agree that the center of gravity of the accused activity in a patent infringement case is 'where the marketing and sales decisions occurred, not just the location of any particular sales activity.' "  Trace-Wilco, Inc. v. Symantec Corp., No. 08-80877, 2009 WL 455432, at *2-3 (S.D. Fla. Feb. 23, 2009) (internal marks omitted), *quoted in* Endotach LLC v. Cook Medical Inc., No. 3:12cv307-MCR, doc. 50 at 5.  While sales have occurred in Florida, sales decisions were made in California.  Accordingly, this factor weighs in Defendant's favor and this Court should follow the well established rule that the preferred forum in patent cases is the Defendant's place of business which usually constitutes the "center of gravity." In re World Wide Medical Tech. LLC., 2012 WL 1252423, at *2.

Another factor considers the location of relevant documents and access to proof. Oehme contends that in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer and, as such, the place where Oehme's documents are kept weight in favor of transfer" to California.  Doc. 10 at 21.  While Plaintiff submits the focus of this case "is the sale and distribution of the infringing products," doc. 12 at 18,

the relevant documents in the stipulated evidence appear to have come from Defendant in reporting those sales. *See* doc. 32-1 at 14. Case law recognizes that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." Carroll, 910 F.Supp.2d at 1339. "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (other citations omitted); In re World Wide Medical Tech. LLC., 2012 WL 1252423, at *2 (N.D. Fla. Apr. 13, 2012) (noting that although documents can easily "be scanned and made available through electronic discovery, this factor is slightly in favor of transfer"). This factor weighs in Defendants' favor as the majority of the relevant documents will be in California.

Plaintiff's choice of forum is in the Northern District of Florida which includes Monticello, Florida, where Plaintiff's business is located. *See* doc. 28 at 12. Plaintiff's "choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996); Carroll, 910 F.Supp.2d at 1333 (noting a plaintiff's "choice of venue is 'entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer.' ")(quoting Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F.Supp.2d 325, 333 (E.D.N.Y. 2006). In this case, Plaintiff's forum choice is outweighed by the other considerations.

Several of the other factors should be considered neutral. There is nothing upon which to base the relative means of the parties and, because neither party is a large corporate entity, this factor is neutral. It is presumed that federal courts in both Florida and California are sufficiently familiar with patent law to render that factor neutral as

well.  *See* <u>Microspherix LLC v. Biocompatibles, Inc.</u>, 2012 WL 243764, at *5 (S.D. Fla. Jan. 25, 2012).  It is also presumed that as to trial efficiency, neither court would tip the scale one way or the other.

In the interests of justice, based on the totality of the circumstances and after weighing the factors, this case should be transferred to the Central District of California for all further proceedings.  Of the nine factors discussed above, five are neutral and three weigh in Defendant's favor.  The only factor that potentially could weigh in Plaintiff's favor, choice of forum, does not do so in this case because it is outweighed by other factors.  The motion to transfer venue, doc. 10, should be granted and this case transferred to California pursuant 28 U.S.C. § 1404(a).

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Oehme's motion to dismiss, doc. 10, for lack of personal jurisdiction be **DENIED,** but the motion to transfer venue pursuant 28 U.S.C. § 1404(a), doc. 10, be **GRANTED**, and this case **TRANSFERRED** to the Central District of California for all further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on July 18, 2013.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**